This is an appeal of three sanction orders issued by the District Court and an award of fees. Each of the orders fails on the legal and factual merits. Each also fails on procedural grounds. I will address the procedural matters first and then move to the merits of each. Wait, you say these are separate orders? Well, it's a single document from the court but three different sanctions. Okay. So the first sanction was imposed under Rule 11 for citing the United States Supreme Court decision in Board of Education v. Rowley as precedent for the standard for a free and appropriate public education under the Individuals with Disabilities Education Act rather than the case of the Sixth Circuit deal v. Hamilton. This was authored by the District Court judge. I note that both cases were cited but they were cited as consistent with each other rather than as the District Court perceived that deal abrogated the Supreme Court ruling. The procedural issue with that case is that it was sui sponte. There was no litigation concerning the matter and there was no show cause order and a fee is prohibited. The second issue was citing the First Amendment when the defendants moved to close the already public administrative record which had already been filed in the District Court unredacted by the Ohio Department of Education and thus was public by the counseled choice pursuant to the IDEA statute and regulations of the defendants. And then was public again when filed in the District Court arguing that closing that was a First Amendment prior restraint. Okay, but they agreed to a public hearing. Does that mean that the record is automatically open? Yes. In Ohio, and it is a state administrative proceeding, under Ohio's public records law, the records of a public proceeding held by a state agency, that's Ohio Revised Code 149, I think it's 53, Your Honor, but Ohio's public records law is a public record. Once it's public, it stays public. That's perfectly consistent with the rulings of this circuit and the United States Supreme Court. Once evidence or information is... And whose First Amendment right is involved? The public. A prior restraint restrains everyone. So it's a broad concept. It's something that the United States Supreme Court has said that a court faced with a motion to close a record should consider in every case that it may impact First Amendment rights. And whether or not you have to have standing to raise the issue before the court for your own rights is not a bar against informing the court that the action it's about to take infringes upon a constitutional right. Plus, the First Amendment is the foundation amendment. It is the one where the broadest standing is often recognized. Okay. Well, I guess you're not really arguing the merits of it. You're just saying it's plausible. Well, I'm actually not arguing the merits. I was going to do the procedural, but the merits are very solid. The question of whether or not First Amendment rights are available to a state agency has not been resolved by the United States Supreme Court. It has been raised in the United States Supreme Court and they found it neither frivolous or sanctionable, but they decided not to resolve the issue because they were able to resolve that case. It's the United States versus the American Library Association on a spending clause issue. So the issue is unresolved as far as the United States Supreme Court is concerned. But the procedural issue is... This really is a procedural issue right off the bat, isn't it? It should be. Doesn't the rule of civil procedure say you must be given a show cause hearing? On the sua sponte order, that is true. And this one's a little complicated and I've said it out in the brief, but the defendants moved for a sanction for raising the First Amendment argument in a specific document, document 23. The district court didn't rule on their document 23 motion as I read it, but I understand the court may see it differently, but instead said it was the repetition of the argument. That repetition, as I see it, has to be a reference, though he didn't cite anything, to the fact that defending against the sanction motion the First Amendment argument was again raised. By the time it was raised in that context, the magistrate judge had already ruled favorably considering the First Amendment argument, saying that he was balancing the public's right to know, the broad concept of a prior restraint, with the privacy interests asserted by the defendants. In addition, the district judge had already ruled that the records were in fact public records. So if that's the basis of it, then there was no, what you just said, Your Honor, is exactly right. It was a sua sponte order with no show cause order. And in that instance where you've got two favorable considerations on your side from the very court in which you are addressing the issue, the absence of notice was simply unconscionable. Okay, so all three of these were done without notice, right? The procedural lack of show cause issue relates to all three. Sanctions or just the first? The third one is under 1927, Your Honor, which technically doesn't have a show cause order. It does have a, it has been interpreted to require notice under the due process clause. The court gave no notice that it was considering sanctions under 1927. It gave no notice of its changed view, and that one's for having filed the public records as exhibits. It gave no notice of having changed its view. It gave no notice of its consideration under 1927. And the third procedural or perhaps merits defect is that under 1927 you have to prove not only that it was vexatious and unreasonable, which I believe since these were public records it was not, but also that it multiplied the proceedings, which it did not. I thought that you did it by mistake. There was one single document in the process that got, we had had conversations and had agreed as far as the school was concerned, that we would redact the documents when we filed them electronically. So when the documents were being filed, one document, for reasons I cannot explain to this day, was missing some of the electronic redactions. There were multiple problems, and I'm blaming it on the electronic process, but I don't know. But they were gone. I removed that document from the docket using the electronic filing rules of the district through the clerk before anyone said anything, before they filed their motion, before anything. That single document was the mistake. The other documents, the actual exhibits to the motion, were redacted and were filed, understanding that we had agreed to this redaction, but also understanding that they were public records and that the agreement was a voluntary concession, not a legal requirement. So those were filed, but they were filed redacted, and they were filed with the document responding to their motion. And it was the judge's ruling on that very motion in which he held they were public records. Okay, so... You're running into your rebuttal time, which is fine. I am running into it. It's up to you. I want to say quickly, with regard to the merits, that the judge found that the Rowley citation was a sanctionable action. I can say only that this circuit itself frequently cites Rowley. It has never said deal abrogated Rowley. I think the district judge misapprehended the way in which deal was understood by the legal community in the courts. It's simply not used that way. The second thing is, is I've talked about this as a prior restraint argument, which was actually all that was said. That's not what the judge sanctioned. The judge sanctioned an argument that was never made. He took the characterization from defendants' motion that it was they personally who, as opposed to a government entity, i.e., the court imposing an order to seal, that was attempting to violate the rule. So the argument that the prior restraint simply was not addressed by the judge. He addressed a different argument as it was characterized by the defendants. And the last one is the records were public at least twice over by the choice of the people who are now contesting it. And under United States Supreme Court law, the law of this circuit, and the law of the state of Ohio, they were public. I'll save the rest of my time for that. Good morning, Your Honors. My name is Eric Clark from the law firm of Oregon Coal. On behalf of appellees Ms. Cassandra Williams and also Mr. Thomas Drake, there are not three separate sanctions orders in this case or three separate sanctions awards in this case. There are three separate and independent bases to award sanctions once. The sanctions amount was $7,500, far below the amount of fees that the court requested to be added up as a result of all of the different bases on which sanctions were awarded. Each one of those, well I should back up, as our brief concedes, there was not a show court cause order issued before the court made a sua sponte sanctions finding based on the deal rally issue. That's improper, right? That is correct, Your Honor, under the INDA case. That ought to be clearly set aside. That's correct, Your Honor. We understand the court's frustration with the misrepresentation of what deal says in the briefing, but ultimately, procedurally, that could not be a basis for a lack of a show cause order. I didn't know it was even sanctionable. If a lawyer argues that a case is in point or should be considered for a particular proposition, you know, we can sanction lawyers here in the Court of Appeals if they get up and say to us something that we believe is incorrect about what a case stands for. I mean, we'd be sanctioning lawyers every day up here for that because that's the function of lawyers to use their imagination to argue what they think the case stands for. I don't understand how that is in any way a sanctionable behavior. Well, I think, Your Honor, and again, ultimately our position is that that basis for sanctions is not necessary to uphold the ultimate sanctions award. I would venture to guess the frustration came from the fact that in briefing, counsel stated, quote, it is long and well established in the Sixth Circuit that, and then stated a particular statement from deal. The deal court, this court in deal, started that same sentence with the facile answer is that, and then the quote that was quoted in the briefing, and then went on to say at some point this facile answer becomes insufficient, and offered a different version. So I think the frustration is not simply getting case law wrong, but actually stating that what the court rejected in that case is what the court actually said. But again, all of that, from our view, is a So you concede that this issue? Certainly, yes, Your Honor. And as we briefed, the other two issues, and we would add that each of the other two issues, well, at least the public records issue standing alone, there are enough attorney's fees to satisfy $7,500 if any of the three bases for sanctions is upheld. And it's important to note, Your Honor, that the show cause issue only applies to the deal rally basis for sanctions because that was the only sua sponte basis for sanctions. So the plaintiff's counsel is wrong when she said they did it three times sua sponte? That's correct, Your Honor. You do not need a separate sua sponte, or excuse me, a show cause order, if the basis for sanctions has been briefed in a Rule 11 motion, which both other bases were. Okay, so you briefed the First Amendment one? Yes, Your Honor, we did. That was briefed as a basis for sanctions. Why is that? I mean, I could certainly see why someone would say, why did they try to recover attorney's fees from your clients? But getting into the specifics of the case, I mean, why is it sanctionable to argue that the court should think about First Amendment considerations in deciding whether to seal the record? Well, Your Honor, the argument that was made that Capelli's argued was sanctionable and that the court found sanctionable was not, contrary to briefing and argumentation, simply the public's right to know. The argument specifically found in their papers is that OCS, Oakstone Community School, a charter school, and under Ohio law, a part of the Ohio's public system of education, itself has a First Amendment right as opposed to First Amendment responsibilities. And that is frivolous, and that's wrong. But the bottom line was that they had a right to challenge whether the record was subject to being sealed, right? Certainly, Your Honor, but not with frivolous arguments that violate Rule 11. There were other arguments that were made, for instance, that it was already made public, that we aren't arguing are frivolous, and certainly they can make a point if they want to try to defend What exactly is the frivolous argument again? That a public school, a part of the state government, has First Amendment rights as opposed to First Amendment responsibilities. We would argue, and as the trial court found, that that gets it backwards. The government, of course, has the responsibilities, not the rights. And the American Library Association case cited from the Supreme Court avoided the question because it was not necessary to answer because the underlying First Amendment claim that was being raised by a public library was in and of itself invalid, even assuming they could possibly have a First Amendment right. Who wanted to keep the information secret? The school? No, Ms. Williams, one of the appellees, Your Honor, and Mr. Drake was her attorney in the original case. They were both sued in this case that we're here for. They wanted to keep the information secret. They wanted to keep the information secret, Your Honor. And what happened is a little bit different than what was stated in oral argument here. There was a mistake, as we understand it from the brief, about missing a few redactions in the first document. But that was not the problem. The problem was then entire documents were filed, that it wasn't just an issue of Rule 5.2. It was a FERPA issue where if all of the information coming together could identify the particular person, that's something you can't disclose. And what's the problem, frankly, probably the strongest basis on which to support this is that an attorney from Ohio Disability Rights, the firm that was representing Ms. Williams in this defensive suit, sent an email immediately saying, Stop doing this. Stop doing this, counsel. Now, was that in response to the first unredacted record, or? It was in response to the first filing, not just the fact that they missed a redaction, that there was more information in there. And then beyond that, so that was about 4 p.m. on March 9, 2012, and then at 6 p.m. filed an emergency, I shouldn't call it emergency, but an immediate motion to seal that, of course, was served to the ECF at 6 p.m. saying, Stop, this is wrong, we've got to stop. And then the following day, volumes of additional confidential information were filed without being sealed. And that, to me, Your Honor, is probably the most egregious issue and one of the bases on which sanctions were awarded. And they were awarded pursuant to 1927, not Rule 11, which, therefore, certain of the procedural things don't apply. And that, in and of itself, caused multiple rounds of briefings. How was it finally resolved? It was sealed. The magistrate found that those documents were protected by FERPA. They should never have been filed on the public document, and they were. And there was enough. Did the magistrate go through some sort of analysis in concluding that? I mean, did the magistrate conclude, Well, I'm going through this analysis, and this is where I ultimately come out? Or, No, this is crazy. You can't do this. It's not even a matter of balancing. You can't do it. Right. I think there was some balancing, Your Honor, for sure. And, indeed, the magistrate, different than the first argument made in the papers by counsel, by OCS, the magistrate, at one point, weighed the public's right to know, which is what a magistrate would do any time you're dealing with an issue for sealing public records. So what should they have done? What did they do wrong? What should have been done is stop whenever you get an email that's alerting you to the fact that this is in violation of law. Rather than file first and ask questions later, stop, seek leave to file those motions, or, excuse me, the exhibits. Send the exhibits to opposing counsel and say, What on this would you like me to redact? Maybe I'll disagree, and maybe we'll have to go to the court. But I'm not just going to, in the face of an email, saying, Stop, this is a major problem. And then an emergency motion saying, We need this to be stopped, to then, the next day, say, I'm just going to keep doing it. Sanctions being imposed upon a lawyer for failing to redact information from the record in the case, I've never heard of it before. Yeah, that alone, Your Honor, I've never heard of. And I don't think we'd even argue that that alone would be grounds for sanctions. I think the question, and what I believe the trial court explained, is that it wasn't just... I thought that's what this sanction order was premised upon, that this record was filed in public, without redactions. I thought that was the sort of basis of it. Well, the basis, Your Honor, was not just that. The basis, Your Honor, was the fact... Was not that. Not just that. Not just that it was filed. It was partly that, plus... Plus the knowledge of counsel, having dealt with cases like this that shouldn't have been done, as the magistrate ultimately found. Plus the notice that was given before they were filed to stop, let's talk about this, don't do this, you can't do this, and to completely disregard that. Understanding that it's an unringable bell, right? Understanding that what? It is an unringable bell, Your Honor. In other words, once something that should have been kept confidential  you can never get it back to where it should have been. What do you mean by this, exactly? Well, Ms. Williams, Your Honor, and her child, who... In what ways? Well, I should say, Your Honor, we don't know, and it's not in the record, whether particular people were able to pick up that information off the docket before it was sealed, but it created the opportunity for anyone with a PACER account and a computer to delve into the specific protective details of a minor's education or disability. The hearing was open, right? The hearing was open, Your Honor, but that's not the same. That's not the same, and there's a ruling, it's a letter to Schenck, it's a ruling from the agency that's in our briefing, specifically finding that just because a parent decides to open the hearing, that was not this litigation, that was separate litigation. It does not mean that for all time and perpetuity and for all purposes, it's public. It's out in the public domain, it's out in the public domain. But there's a difference, Your Honor, I would submit, between opening a hearing to the public for the purposes of whatever limited audience that may be, an administrative hearing, right? Nothing online, nothing on... And saying, because you have done that, now anyone with a mouse and a pacer can learn about my child's disabilities and intimate details of her education. When did that ruling come, before or after she filed these papers? The letter ruling, Your Honor? I don't know offhand, but I believe it predated it, but I will try to get that answer for you. Bear with me, Your Honor. Sorry. Yes, the ruling was in 2004, Your Honor. Long before the events in this case. Did you have some history of sanctioning lawyers? Your Honor, I don't know. I don't know if I can speak to that. I just don't have enough information outside the case to say that. But I would say, Your Honor... No credible street rumor? What's that? No credible street rumor? Yeah, I'll say that, Your Honor. But I'd say that, in the end, we're dealing with a $7,500 sanctions order that was reduced from $53,000 in fees that were calculated for the three bases. It's very harmful for a lawyer's reputation, you know that. Understood, Your Honor. It's not just the $7,500, it's the moral dereliction that she has been found to have committed. Understood, Your Honor, and we take that seriously, and I think it was taken very seriously before there was any even decision to file for a motion for sanctions. I'm not saying that it's $7,500 for the purpose of saying, what's the big deal? It's strange that she wouldn't have even been given notice on the first thing. It's very impulsive on the surface, it looks like. Well, Your Honor, I think that there was a procedural problem with one of the grounds, but I think the others were taken... Certainly, counsel for Ms. Williams took it very seriously before filing a sanctions motion. There were other grounds for sanctions that were not upheld, that we are not seeking an alternative ground. We respect the court's discretion to deny those. But the point was, there were claims filed that we needed to make sure were not being retaliatory toward a mother seeking a fate for her child in an administrative proceeding. It was a serious thing. And the point of the $7,500, Your Honor, is not that this is not an important thing. It is important. But that each of the three bases is enough to support that sanctions order. Well, in the last one, what is the legal basis for the sanction? Which one, Your Honor? I'm sorry. Filing the records, not under seal. What is the legal basis for that sanction? That's Section 1927, Your Honor, pursuant to the court's express language. What is it that she did? What did it violate? Oh, the substance violation. It would violate FERPA, Your Honor. FERPA is an acronym. What does that stand for? Good question. I think it's a... I don't have it for me, Your Honor. Who is it then? Who is FERPA? What is it? It's a federal sort of education privacy law, Your Honor. And I don't know the acronym. So is it clear on the face of FERPA that filing those documents of an open hearing is a FERPA violation? FERPA says that you can lose funding if you have a policy and practice of releasing, disclosing personally identifiable information, which is defined not just as specific sort of things we find in Rule 5.2, but any information that's sort of in the cumulative people could take from context and say, oh, I know who this child is. What that has been understood by education agencies, charter schools, public schools, Department of Education, all the time is you do not release these kind of documents in this kind of setting. Indeed, it seems that the basis for which counsel relies is that in this case it had already been public, that there's a difference. But in the normal course, it's taken as a given that you can't. In the administrative process. And in appeals of those administrative processes which occur in the district court. Those are very common, and you do not release this kind of language. But what do you do? You file the record under seal? Is that what the problem is? Yes, Your Honor. You can file the record under seal if necessary. What do you mean by if necessary? Well, in other words, if there is certain information for the appeal that actually needs to be considered in the appeal. Are you saying you don't file the record? No, I should take that back. The whole record would come on appeal, and it can be sealed. Or the portions of it that need to be sealed can be sealed. Or redacted. Or redacted, Your Honor. That's right. And in this case, my time is very far. Go ahead. This was not an appeal. So another thing to keep in mind is the record actually made it to the district court, but we don't know why. That's not what was necessary here. Often you have this administrative proceeding, and someone wants to challenge the results. And that goes to a district court. And so the Department of Education is used to sending the record up to the district court. But this is not an appeal, right? This is a separate offensive tactic. You know, one of the problems you run into, Counsel, here, is that the presupposition about judicial, federal judicial matters, is that it's open to the public, transparent. We want our processes to be open to public knowledge because that's the only way a judicial system can ensure trustworthiness. So there's a strong, strong view that judicial proceedings should be public. And so it's only an exception to the general principle that they are secret. Without a doubt, Your Honor, I would not disagree with a single word there. This is one of those exceptions. This is one of the things that matter that much, that it trumps the very valuable and important public right to know. And that's what FERPA says. And that's what all agencies do as a matter of course in cases like these, except here. Are you familiar with any sanctions cases where the lawyer has mistakenly not redacted something? I am not, Your Honor, but that is not this case. This is not a mistake. That's what the court found in its discretionary review of the facts, that there was a conscious choice to do this after there was a warning that this was a problem. And that's what makes it sanctionable. Thank you, Your Honors. Thank you. Your Honors, I wanted to quote exactly what the district judge said was the violation under 1927. It was, quote, the repeated filing of a minor's unsealed, unredacted educational records. As I have said, all except that first one that was removed before anything happened, were redacted in conformity with the agreement. Well, I think that he's saying something different, that putting aside the first one where something happened, that the judge may have been wrong when he said that they were all unredacted, but that in any event, even the redacted materials were not redacted to the point that would be compliant with the federal statute, and that there was still much too much recognizable information, and thus it should have been filed under seal. I think that's what they're saying. Well, Your Honor, I guess that's not what the judge says in his decision. But assuming that that kind of an assumption was being made, none of that was said prior to this. But when you filed, okay, there's the first document that's not redacted, and then is it correct that there was then another filing with records that were redacted, and then the organization attorney contacted you and said, stop, you can't... No, Your Honor, that is completely untrue. What happened was, there was a problem, as I said, with the electronic redactions. This document was gone through twice, once by hand, a second time electronically using the Adobe redaction function. When that first document was filed, some of those Adobe things were gone. I can't explain it, but I will tell you a different weird thing happened in an Ohio Supreme Court appendix recently with Adobe, so it does happen. Anyway, I realized it. I withdrew the document immediately, before they made any contact, before anyone said anything. I was dealing with the documents. I was trying to get them, because I was filing them as exhibits to a motion that had already been filed, get them done quickly. I was not in my office. I was out at 4 o'clock that afternoon dealing with the very problem I'm talking about, and somebody, unrelated to the case, who apparently works in that office, someone I don't know... Works in what office? Worked in the Ohio Legal Rights Office. It was not an attorney on the case, not a person who entered appearance, not a name associated with the case, and the email had no indication that it was associated with the case or with that office in the email notice. Not that that would have mattered, because I wasn't there to get it at that time anyway. I think I've pointed this out in the brief. We even followed the three-day mail rule for electronic notices. I just didn't get it. I was dealing with those documents. It's Friday afternoon. They were filed the next day after the redactions were fixed. So there's no acceptance. You're saying they were filed Saturday? Yeah. The documents were being dealt with by the document handling company because everything had to be re-scanned. It was a big electronic technology mess. I picked them up. I filed them. I hadn't gone into my email, and I had no reason to think there was a problem. The one that got filed that didn't meet the agreement, which is reflected in the record in exchanged emails that we had made much earlier to redact consistent with Rule 5.2, had already been removed. I had no reason to think anything was wrong.  Well, I thought we did. They have explicitly said in the pleadings that there was no agreement. But I talked on the phone with them. This is all in the record in various pleadings or documents. With them, and they asked if we could redact. Everything had been made public. Of course, I consulted the client. The client agreed to redaction. That was communicated back. I thought we had an agreement. Sometime later, they said, we want to put that into a protective order, and we also want to talk about sealing the record when this case is over. So they had actually sent me a copy of... When this case is over? When the... You're not talking about the administrative case. You're talking about when this case is over. No, no, no, the administrative case. They wanted to seal the record when the district court finished the case. We had exchanged documents, and they had memorialized the agreement that I thought we had made orally. I am really confused. You're saying that they only cared about sealing the record when the district court litigation was done or when the administrative... That's what they said, and that is reflected in the email exhibits that are... Okay, which litigation? Your litigation against them or an appeal of... In the litigation in the district court, they had early in the year contacted me and said, can we redact in conformity with Rule 5.2? I consulted the client. The client agreed. Later on, they said, we want to put this into a protective order that we want the judge to sign. Well, their goal was to have the record sealed at the conclusion of the process. Okay, so I'm sorry. Where does this fit in? You asked about the agreement. I'm sorry. Where does this fit in in the timeline with your filing papers and getting this email? Okay, the agreement happened before the papers were filed. The agreement, the telephonic, what I consider to be an oral agreement and understood to be one, happened, I would say, within a week or two after the Ohio Department of Education filed the full unredacted record in the federal court. A little while after that telephonic conversation, they approached again saying, we would like to memorialize that in an order that we hope the judge will sign that will also seal this record at the conclusion of the proceedings. Copies of their draft of that are in the record and have been cited in the briefing. And my response, changing nothing on redaction, was sent back to them. We were not in agreement on the sealing issue. We were, I thought, in complete agreement on the redaction. That was taking place. We actually talked with each other on the day of the filing. Due to the mistake in filing, they actually received notice that I was filing these administrative records in the document that was filed and served upon them electronically the day before the mistaken document was ultimately filed. This electronic problem occurred immediately right after the motion was filed. So they knew we had an agreement. They knew the documents were coming. They said nothing. After document 15 had been removed, they sent this alleged bogus contact from an unknown person not involved in the case. Okay. About the document 15. It did not include anything else. I'm sorry, Your Honor. Did you have any more questions? No, I'm finished. Thank you. Your time is up. Thank you, Your Honor. Thank you both. Case can be submitted.